## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

BELVA ANN NAHNO-LOPEZ, et al.,    )
                                        )
       Plaintiffs,    )
                                          )
vs.    )    Case No. CIV-08-1147-F
                                          )
JEFF HOUSER, et al.,    )
                                          )
       Defendants.    )

## ORDER

"Defendants' Motion to Dismiss Pursuant to Rules 12(b)(1) and 19 of the Federal Rules" (doc. no. 10), and "Defendants' Motion to Strike Claim for Relief Pursuant to Rule 12(f) of the Federal Rules" (doc. no. 11), are before the court. The briefing is complete, and the motions are ready to be determined.

<u>Introduction</u>

This action is brought by two sets of plaintiffs. "The Kerchee Plaintiffs" are alleged to comprise over fifty-one percent of the beneficial owners of Comanche Allotment No. 2329. The Kerchee Plaintiffs are alleged to be enrolled members of the Comanche Tribe of Oklahoma. The other plaintiffs are the "the Pence Plaintiffs." The Pence Plaintiffs are alleged to own a fifty-year leasehold which terminates in 2026. The Pence Plaintiffs allege that this leasehold includes part of Comanche Allotment No. 2329. Margaret Pence, one of the Pence Plaintiffs, is alleged to be an enrolled member of the Kiowa Indian Tribe of Oklahoma. Reachele (or Reacele, spelled both ways in the complaint) Darby-Garcia, the second Pence Plaintiff, is alleged to be an enrolled member of the Comanche Tribe of Oklahoma.

Defendants include six officials of the Fort Sill Apache Tribe of Oklahoma (the Fort Sill Apache Tribe, or the Tribe):  Jeff Houser, Lori Ware, Michael Darrow, Robin Isom, Loretta Bucknor and Janet Mann;  these parties are alleged to comprise the Tribal Council or Committee of the Fort Sill Apache Tribe and each of them is sued in both their individual and official capacities.[1]  Norman D. Nott (sometimes spelled "Knott" in the parties' papers) is also a defendant in his individual capacity.  He is alleged to be the manager of the Fort Sill Apache Tribe and a non-Indian.  The complaint does not allege any official-capacity claims against Mr. Nott.  Finally, the Fort Sill Apache Casino, located in Lawton, Oklahoma, is a defendant.

The Motion to Dismiss

All defendants have moved for dismissal on jurisdictional grounds under Rule 12(b)(1), Fed. R. Civ. P.  First, defendants argue that the jurisdictional allegations are fundamentally defective because none of the laws alleged in the complaint provide subject matter jurisdiction for this type of action.  (Diversity jurisdiction is not alleged and nothing suggests it is available.)  Second, defendants seek dismissal based on the Fort Sill Apache Tribe's sovereign immunity.  Third, defendants argue the complaint should be dismissed because plaintiffs are unable to join parties required to be joined pursuant to Rule 19, Fed. R. Civ. P., namely the Fort Sill Apache Tribe and the United States.

The complaint sets out, in separate counts, each of the substantive federal statutes upon which the complaint relies for jurisdiction, and defendants have challenged the sufficiency of each of these counts.  (Counts one through six are the federal counts.)  Although the motion to dismiss does not cite Rule 12(b)(6), Fed. R.

---

[1]*See*, caption of the complaint and ¶ 1 of the complaint, alleging these defendants are sued in their individual and official capacities; *but see*, ¶¶ 4-7 of the complaint, stating these defendants are sued in their individual capacities.

Civ. P., the parties' arguments address the question of whether the complaint states a viable cause of action under each of the federal statutes proposed as a basis of jurisdiction.  For example, proposition III of plaintiff's response brief (doc. no. 19, pp. 15-19) is entitled "Plaintiffs Have Adequately Stated Claims Under the Cited Federal Statutes."[2]  Although the court is mindful of the different uses of Rules 12(b)(1) and 12(b)(6), in these circumstances it is appropriate to determine whether jurisdiction is provided by any of the federal statutes, and to determine whether the claims alleged under the substantive federal statutes (counts one through six) are viable under Rule 12(b)(6).

Standards

A plaintiff creates federal-question jurisdiction by means of a well-pleaded complaint establishing either that federal law creates the cause of action or that the plaintiff's right to relief depends on resolution of a substantial question of federal law. Sac & Fox Nation of Oklahoma v. Cuomo, 193 F.3d 1162, 1165 (10th Cir. 1999), citations and quotations omitted.  Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of showing jurisdiction exists.  *Id.*  Federal question jurisdiction must appear on the face of the complaint, *id.* at 1165-66; the instant complaint references numerous federal statutes so the complaint satisfies this criterion. The complaint must also identify the statutory or constitutional provision under which the claim arises, *id.*; the instant complaint does so by naming numerous federal

---

[2]*See also*, Davoll v. Webb, 194 F.3d 1116, 1129 (10th Cir. 1999) (if a federal statute upon which a claim is premised is immaterial, or the claim under that statute wholly immaterial and frivolous, an exception to the usual rule which is that jurisdiction is not defeated by the possibility that the averments might fail to state a cause of action on which plaintiffs could actually recover, is available; additionally, if the federal statute upon which a claim is predicated is interpreted to be inapplicable, it could be argued that the plaintiff has failed to present a federal question and thus subject matter jurisdiction is absent; however, in such cases, the preferable practice is to assume that jurisdiction exists and proceed to determine the merits).

statutes under which plaintiffs contend this action arises.  Finally, the complaint must allege sufficient facts to show that the case is one arising under federal law, *id.*  Whether the complaint satisfies this criterion is much less clear.  To determine the answer to this question the court must separately consider each of the federal statutes upon which jurisdiction is predicated and determine whether the alleged facts show that the claims (also referred to as counts) in question arise under these federal laws.  Simply put, the question is whether these substantive federal statutes apply.

Whether the issue is framed as a facial attack on the ground of lack of jurisdiction over the subject matter, or as a question of whether the complaint states a claim under the substantive federal statutes cited in the complaint, the non-movant enjoys similar safeguards.  The allegations of the complaint should be construed favorably to the pleader and the court will not look beyond the face of the complaint.[3] *See*, *e.g.*, Sea Vessel Inc. v. Reyes, 23 F.3d 345, 347 (11th Cir. 1994) (non-moving party receives the same protection with respect to 12(b)(1) as it would defending against a motion brought under Rule 12(b)(6), quoting Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990)); 2 Moore's Federal Practice, §12.30[4] (Matthew Bender 3d ed.).

Summary of Complaint

To determine whether any of the federal statutes relied on by the plaintiffs confer jurisdiction, it is necessary to review the allegations in detail.

The complaint alleges generally that all of the plaintiffs' property (including both the Kerchee Plaintiffs' land and the Pence Plaintiffs' leasehold) lies within Allotment No. 2329, to the west and south of the Fort Sill Apache Tribe's casino.

---

[3]No party has requested the court to consider evidence for or against jurisdiction.  Although defendants have recently filed a notice with an attached letter from the BIA addressed to Margaret Pence, the letter does not pertain to the jurisdictional dispute.

(Doc. no. 1, ¶ ¶ 18, 19).  Plaintiffs allege that defendants have acted outside their authority, in violation of federal statutes, "by trespassing, hindering access, encroaching, detaining and destroying the Kerchee and Pence Plaintiff(s)' federal trust property."  (¶10.)  The complaint seeks relief "from the intentional and egregious actions of the Defendants in their continuing trespass, interference with exclusive use, occupancy, illegal detention, encroachment and destruction of the Kerchee and Pence Plaintiff(s)' lands" included in Allotment No. 2329.  (¶ 16.)  The complaint alleges that defendants "continue to invade and hinder the ability of the Plaintiff's [sic] to access their lands and continue to interfere in the quiet enjoyment and occupancy of said lands by the Plaintiffs." (¶17.)

In support of these trespass and interference-type claims, the complaint alleges the following specific facts and events.

-- Defendants have erected a parking facility that allows for the parking of approximately 150 customer vehicles for the Fort Sill Apache Tribe Casino (the casino or the gaming facility), on approximately ten acres of the Kerchee Plaintiffs' allotted property.  (¶ 24)

-- Defendants have erected temporary buildings on the lands in question. (¶ 25.)

-- Defendants have placed approximately one foot of gravel on said lands and, until recently, had placed asphalt over the lands.  (¶ 26)

-- Approximately ten acres or more of Allotment No. 2329 have been irreparably destroyed due to the intentional, illegal and egregious continuing trespass actions of the defendants.  (¶ 27)

-- Defendants have refused to return and reclaim said lands and pay the reasonable commercial lease value for the use of these lands for the past five years. (¶28)

-- Defendants attempted to enter into a lease with some Kerchee Plaintiffs but the lease was never approved by the Bureau of Indian Affairs.  (¶¶ 30-33)

-- A home is located on the Pence Plaintiffs' leasehold and the present tenants have been damaged by the complete disruption of their quiet enjoyment of the home.  (¶ 36)

-- Defendants have caused health hazards, disrupted telephone lines and water on numerous occasions, and have blocked ingress and egress of the tenants on the Pence Plaintiffs' leasehold.  (¶ 37)

-- Without permission or a sublease, defendants constructed a concrete pad, placed large heating and air conditioning units, erected a fence, destroyed approximately 22 trees, and otherwise encroached and trespassed on the leasehold land.  (¶ 38)

-- These actions have occurred without any type of legal documentation which would permit such trespass, encroachment and erection of fixtures and improvements for the gaming facility.  (¶ 39)  Thus, the complaint makes clear that all of the encroaching fixtures and destructive "improvements" belong to the gaming facility.

-- For twelve months the Pence Plaintiffs have attempted to oust and eject defendants from their leasehold property.  (¶ 41)

-- In 2001, the Fort Still Apache Tribe entered into a purchase agreement with the Kerchee Plaintiffs to purchase part of their Allotment No. 2329 adjacent to the casino; the purchase agreement was never approved by the BIA; as a result of the BIA's withholding a decision on the purchase agreement, the Fort Sill Apache Tribe attempted to enter into a lease agreement with the Kerchee Plaintiffs.  (¶¶ 42-43)

-- In 2007, the Fort Sill Apache Tribe Casino began construction of a customer parking lot on Kerchee Plaintiffs' land.  (¶ 44)

-- The BIA sent a letter to the Fort Still Apache Tribe notifying the Tribe of the trespass by the Fort Sill Apache Casino and informing the Tribe that any purported lease agreement was null and void; the Tribe attempted to appeal the notice of trespass; with respect to the Kerchee Plaintiffs' lands, a final notice of trespass was issued by the Anadarko Agency of the BIA in December of 2007; the Fort Sill Apache Tribe filed suit in this court to challenge the trespass determination but that action was dismissed in July of 2008, based on the notice of voluntary dismissal filed by the Tribe (¶¶ 45-50); plaintiffs contend the dismissal of that prior suit means that the BIA has determined that the Fort Sill Apache Tribe is trespassing on the Kerchee Plaintiffs' land and that defendants have no valid lease or other authorization to justify their conduct.  (¶¶51-52.)

Following these allegations, the complaint sets out seven theories of liability. Counts one through six allege violations of specific federal statutes.  Count seven alleges a violation of the common law of trespass.

The complaint concludes with a prayer for relief which seeks relief of three basic types: declaratory relief, equitable relief, and money damages.  The prayer seeks a declaration that defendants' conduct is outside the scope of their authority pursuant to tribal law and federal law.  As for equitable relief, the prayer asks the court to permanently enjoin further trespass, encroachment and destruction of plaintiffs' lands; asks the court to eject defendants from plaintiffs' lands; and asks the court to require defendants to reclaim the land, returning it to its prior condition.  With respect to monetary relief, the prayer seeks treble damages in an amount "believed to exceed $15,000,000.00" including consequential damages, interest, attorney fees and costs. Finally, the prayer asks for other relief deemed appropriate by the court.

***

-7-

Having conducted a careful review of the complaint, the court finds that this action is essentially a trespass case, regardless of the specific theory of liability. This fact is recognized by plaintiffs in their own description of their lawsuit. As stated by plaintiffs, "This [case] is purely and simply a matter of trespass and damage to allotted and leased lands...." (Plaintiff's resp. br., doc. no. 19, p. 16.)

<u>Sufficiency of the Jurisdictional Allegations</u>

Defendants' argue that the jurisdictional allegations are fundamentally insufficient because none of the federal statutes cited in the complaint as a basis for federal subject matter jurisdiction,[4] actually apply to this action. Listed in the sequence in which they are referenced in the jurisdictional portion of the complaint (*see* ¶¶ 13-15), the complaint relies on the following federal statutes as providing subject matter jurisdiction:

-- Title 28 U.S.C. § 1331;

-- Title 28 U.S.C. § 1353;

-- Title 25 U.S.C. § 177;

-- Title 25 U.S.C. § 202;

-- Title 25 U.S.C. § 345;

-- Title 25 U.S.C. § 348;

-- Title 25 U.S.C. § 415(a);

-- Title 25 U.S.C. § 3713(a)(1); and

-- Title 28 U.S.C. § § 2201 and 2202.

Of the above statutes, 28 U.S.C. §§1331, 2201 and 2202, in and of themselves, do not supply a substantive basis for federal jurisdiction. Section 1331 gives the

_____

[4]The complaint (at ¶ 13) also lists "common law principles of trespass" as a basis of federal jurisdiction, but trespass is a state law theory of liability and state law cannot provide federal jurisdiction.

federal district court jurisdiction only when a federal question arises based on *other* federal law.  As stated in § 1331, federal question jurisdiction depends upon alleging a federal claim "arising under the Constitution, laws or treaties of the United States." Title 28 U.S.C. § 2201 (creation of declaratory remedy) and § 2202 (when declaratory relief is given, further relief may also be given), create declaratory relief as an additional remedy beyond injunctive relief or damages but they do not provide any additional right of entry into federal courts or otherwise contribute to the scope of jurisdiction of federal courts.  Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950).  Setting aside for the moment the other Title 28 statute cited in the complaint as a source of jurisdiction, 28 U.S.C. § 1353, the court next considers the remaining federal statutes cited in the complaint as a basis for jurisdiction.

Title 25 U.S.C. § 177 is the Indian Trade and Non-intercourse Act.  (The complaint alleges a violation of this statute in count one.)  Only tribes have standing to bring claims under this Act; individual Indians do not have standing under this Act.  *See*, Gardner v. Wyasket, 197 Fed. Appx. 721 (10th Cir. 2005), unpublished decision cited pursuant to the requirements of Tenth Circuit Rule 32.1.  The Indian Non-intercourse Act was designed to protect the land rights only of tribes; individual Indians do not fall within the zone of interests protected by this Act.  *Id*. at 723.  *See also*, San Xavier Development Authority v. Charles, 237 F.3d 1149 (9th Cir. 2001) (property subleased by the development authority is not tribal land, it is allotted land owned by individual landowners, so that district court properly held § 177 does not apply and individual Indians do not have standing to contest a transfer of tribal lands under this statute).

In this action plaintiffs allege they are tribal members, and individual allotment owners and leaseholders of allotted land; no Tribe is a plaintiff.  Although plaintiffs argue that as a matter of first impression they should be allowed to utilize § 177 to

protect their individual allotments and leases of Indian lands from the illegal acts of the defendants, the court rejects that argument because it is well established that individual Indians have no claim under this Act.  Accordingly, the court finds that § 177 does not provide jurisdiction and that the allegations establish § 177 does not apply.

Title 25 U.S.C. § 202 makes it unlawful for a person to induce an Indian to execute an instrument purporting to convey any land or any interest therein held by the United States in trust for such Indian.  (Count five of the complaint alleges a violation of § 202.)  This law provides that a person violating this section shall be deemed guilty of a misdemeanor punishable by a fine not to exceed $500 for a first offense, or by a fine not exceeding $500 or imprisonment not exceeding one year or both for a second offense.  The statute does not expressly create a private cause of action, and the court rejects plaintiffs' contention that a private cause of action should be implied.  The fact that the statute provides for penalties and imprisonment strongly indicates that no private action was intended, and plaintiffs have not cited any sources suggesting Congress intended a private cause of action under § 202.  *See*, Sonnenfeld v. City and County of Denver, 100 F.3d 744, 747 (10th Cir. 1996) (Cort v. Ash's four factors have effectively been condensed into one test, which is whether Congress, expressly or by implication, intended to create a private cause of action).  The court rejects plaintiffs' contention that a private cause of action should be implied under § 202.  Accordingly, § 202 provides no jurisdiction and does not apply.

Title 25 U.S.C. § 345.  Title 25 U.S.C. § 345 provides, in pertinent part, as follows.

> All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or

<u>excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit or proceeding in relation to their right thereto in the proper district court of the United States;</u> and said district courts are given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty (and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendants)....

(Emphasis added.)

Construing this statute in <u>U.S. v. Mottaz</u>, 476 U.S. 834 (1986), the Supreme Court states as follows.

Section 345 grants federal district courts jurisdiction over two types of cases:  (i) proceedings "involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty," and (ii) <u>proceedings "in relation to" the claimed right of a person of Indian descent to land that was once allotted.</u>  Section 345 thus contemplates two types of suits involving allotments:  suits seeking the issuance of an allotment ... and suits involving "the interests and rights of the Indian in his allotment or patent after he has acquired it...."

<u>Id</u>. at 845, emphasis added.

Defendants concede that this action comes within the second category described in <u>Mottaz</u> because it is a suit "in relation to" the claimed right of a person of Indian descent to land that was once allotted.  The court agrees.  Additionally, the court finds that it is clear from the broad language of § 345 itself, that jurisdiction is provided for this type of action.  The statute provides jurisdiction when a person of Indian descent, who is entitled to an allotment of land, claims to have been "unlawfully denied or excluded from any allotment...."  This action alleges that defendants have trespassed on Allotment No. 2329 by placing various casino fixtures on the land, that defendants

have blocked access to the property, and that defendants have deprived plaintiffs of the quiet enjoyment and occupancy of their property. This conduct falls within the statutory language of § 345 and within the description of that statute's coverage stated in <u>Mottaz</u>. Accordingly, § 345 provides federal jurisdiction for this action.[5]

Section 345 only provides jurisdiction, however, when allotment *owners* bring the claim. While the Kerchee Plaintiffs are alleged to own the allotment in question, the Pence Plaintiffs are not alleged to be owners of an allotment, they are only alleged to be leaseholders of allotted lands. Accordingly, the court finds that the Pence Plaintiffs have no claim under § 345.

<u>Title 25 U.S.C. § 348</u> (violation of which is alleged in count three) restricts alienation of allotted lands, and <u>25 U.S.C. § 415(a)</u> (violation of which is alleged in count four) recognizes that the tribes may lease tribal lands to private entities subject to the approval of the Secretary of the Interior through the Bureau of Indian Affairs. In their response brief, plaintiffs appear to stop short of pressing their position (alleged in the complaint) that either of these laws creates jurisdiction here. Rather, plaintiffs appear to argue that these laws are merely relevant because they render defendants' conduct (such as securing leases without the approval of the Bureau of Indian Affairs) unauthorized. In any event, if plaintiffs did intend to press their argument that these statutes provide jurisdiction, plaintiffs' authorities do not show

_____

[5]*See also*, <u>Scholder v. U.S.</u>, 428 F.2d 1123, 1129 (9th Cir. 1970) (finding jurisdiction under § 345 where charges in dispute amounted to a lien on the individual allotment, reducing its sale value); <u>Scholder</u> is cited in <u>Mottaz</u> in support of the statement that § 345 grants federal jurisdiction over suits involving the interests and rights of the Indian in his allotment after he has acquired it. <u>Mottaz</u>, 476 U.S. at 845. <u>Scholder</u> is also cited in <u>Begay v. Albers</u>, 721 F.2d 1274, 1278 (10th Cir. 1983) for the proposition that § 345 authorizes actions to compel the issuance of an allotment and actions to protect the interests and rights of an Indian in his allotment after he has acquired it. *Id.* at 1278.

that to be the case.[6]  Plaintiffs have not shown jurisdiction exists under § 348 or §415(a), and the court finds that these statutes do not apply.

Title 25 U.S.C. § 3713(a)(1) is part of the American Indian Agricultural Resource Management Act, 25 U.S.C. §§ 3701-3746.  The cited section provides for regulations to establish civil penalties for trespass on Indian agricultural lands and provides for concurrent enforcement jurisdiction between Indian Tribes and the federal government.  (Violation of this section is alleged in count six.)  This statute does not apply to plaintiffs' claims because there are no allegations that the land in question is Indian agricultural land.  Even if the complaint could be amended to allege that the land involved is Indian agricultural land, § 3713 would not help plaintiffs here.  The statute sets civil penalties and provides for enforcement by the tribes and the United States, implicitly rejecting any notion that § 3713 creates a private cause of action.  Accordingly, amendment would be futile.  Section § 3713 does not provide federal jurisdiction and it does not apply.

Finally, 28 U.S.C. § 1353 (mentioned only in the jurisdictional portion of the complaint and not as the basis for any of the separately numbered counts)  provides that the "district courts shall have original jurisdiction of any civil action involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any Act of Congress or treaty."  This statute may be cited in the

---

[6]Haymond v. Scheer, 543 P.2d 541 (Okla. 1975), for example, was tried in the Oklahoma state courts and says nothing about federal jurisdiction.  The other case cited by plaintiffs in their discussion of § 348 is Appleton v. Kennedy, 268 F. Supp. 22 (N.D. Okla. 1967). Appleton relies on diversity jurisdiction, id. at *23-24.  The two cases plaintiffs cite in their discussion of § 415 also are not helpful to them in this discussion of jurisdiction.  Brown v. United States, 86 F.3d 1554 (Fed. Cir. 1996) was a suit against the United States, and jurisdiction was predicated on the Tucker Act. Id. at 1559.  Sangre de Cristo Development Company, Inc. v. United States, 932 F.2d 891 (10th Cir. 1991) also involved claims against the United States.  Addressing sovereign immunity issues, it discussed jurisdiction under a special public law, Pub. L. No. 96-549, 94 Stat. 3220 (1980).  Id. at 896-97.

complaint only as a recodification of the jurisdictional portion of § 345, which some courts have held that it is.  *See,* <u>Scholder</u>, 428 F.2d 1123, 1126 n.2 (9th Cir.). Regardless, if plaintiffs did intend to allege § 1353 as a substantive basis of federal jurisdiction, that statute does not include the same broad language found in §345 which this court has relied upon to find federal jurisdiction under § 345.  Although § 1335 provides jurisdiction for an action involving the right of a person "to any allotment of land under any Act of Congress or treaty," this action (unlike an action involving title to an allotment, for example) does not involve the rights of the Kerchee Plaintiffs or the Pence Plaintiffs "to" an Indian Allotment "under a Congressional Act or treaty."  The court finds that § 1353 does not provide jurisdiction and is not applicable to this action.[7]

***

In summary, 25 U.S.C. § 345, violation of which is alleged in count two, provides federal jurisdiction in this action.  None of the other substantive federal statutes alleged in the complaint provide federal jurisdiction.  Accordingly, the complaint alleges sufficient facts to show that this action is one arising under federal law, 25 U.S.C. § 345.

With at least one substantive basis for federal jurisdiction having been established, the court further finds that its supplemental jurisdiction extends to the state law trespass claims alleged in count seven.  Both the Kerchee Plaintiffs and the Pence Plaintiffs allege trespass claims in count seven.[8]  Thus, despite the finding that

---

[7]Alternatively, if the jurisdiction provided by § 1353 is equal to that of 25 U.S.C. § 345 because § 1353 is a recodification of all jurisdiction conferred by § 345, then the court finds that §1353 provides another, if duplicative, source for federal jurisdiction.  This ruling would not change the results reached in this order.

[8]Title 28 U.S.C. §1367 provides that the district courts have jurisdiction over claims which are so related to claims over which the court has original jurisdiction that all of the claims form part
(continued...)

the Pence Plaintiffs do not have a viable claim under § 345, they remain as plaintiffs in this action.

For these reasons, defendants' first ground for dismissal, which is that the court lacks federal subject matter jurisdiction, is rejected. However, the reasoning that leads to the conclusion that none of the substantive federal statutes other than § 345 provide jurisdiction requires dismissal of the counts which allege claims under these other federal statutes because these statutes do not apply to the facts alleged in this action. Accordingly, the court finds that the complaint fails to state a claim under 25 U.S.C. § 177 (count one),  25 U.S.C. § 202 (count five), 25 U.S.C. § 348 (count three), 25 U.S.C. § 415(a) (count four), and 25 U.S.C. § 3713(a)(1) (count six).  Counts one, three, four, five and six are **DISMISSED** under Rule 12(b)(6) for failure to state a claim.

<u>Defendants' Tribal Immunity</u>

Defendants argue that the Fort Sill Apache Tribe's sovereign immunity requires dismissal of this action.  This ground for dismissal is a challenge to the court's subject matter jurisdiction.  <u>E.F.W. v. St. Stephen's Indian High School</u>, 264 F.3d 1297, 1303 (10th Cir. 2001).

There is no pertinent act of Congress that waives the Fort Sill Apache Tribe of Oklahoma's immunity to suit for the type of conduct alleged in this action, and there is no allegation that the Tribe has waived its immunity with respect to claims alleged in this action.  The Tribe's immunity is, in fact, conceded by the plaintiffs, which is surely why the Tribe is not named as a defendant.  The court therefore concludes that

---

[8](...continued)

of the same case or controversy.  All of the property in dispute is part of the same original Allotment No. 2329.  Furthermore, the same basic dispute exists between all plaintiffs and the defendants with respect to the use of the properties in question.  These alleged facts make the Pence Plaintiffs' claims part of the same case or controversy as the Kerchee Plaintiffs' claims, and the court finds that it is appropriate to exercise its supplemental jurisdiction over both sets of plaintiffs' trespass claims.

the Fort Sill Apache Tribe of Oklahoma does have sovereign immunity.  The issues raised by defendants' motion are not whether the Tribe *per se* is immune from suit but to what extent the individual defendants and the casino are protected from suit as a result of the Tribe's immunity.

The Tenth Circuit gave guidance to district courts considering these difficult issues of tribal immunity in Native American Distributing v. Seneca-Cayuga Tobacco Company, 546 F.3d 1288 (10th Cir. 2008).  In that action, a tobacco distributor sued a tobacco manufacturer.  The district court determined that the tobacco manufacturer was a tribal enterprise entitled to tribal immunity.  Plaintiff also sued individuals including the tribe's former chief and managers of the tobacco manufacturer.  The action alleged breach of contract and civil conspiracy claims.  The Tenth Circuit upheld the district court's finding that the tobacco manufacturer was a subdivision of the tribe and entitled to immunity.  The Tenth Circuit, however, reversed the district court's determination that the individual defendants were immune from suit.  This court is guided by the framework set forth in Native American Distributing. Accordingly, the court first considers the immunity of the casino, and then the immunity of the individual defendants with respect to both official-capacity claims and individual-capacity claims.

1. *The casino's immunity.*

As stated in Native American Distributing, *id.* at 1292, (emphasis added, and some quotations and citations omitted):

> Indian tribes are "domestic dependent nations" with sovereignty over their members and territories. As sovereign powers, federally-recognized Indian tribes possess immunity from suit in federal court. Tribal immunity extends to subdivisions of a tribe, and even bars suits arising from a tribe's commercial activities. See Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 759, 118 S.Ct. 1700, 140 L. Ed.2d 981 (1998) ( "Tribes enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial

activities and whether they were made on or off a reservation."); *see also* <u>*Allen v. Gold Country Casino*</u>*, 464 F.3d 1044, 1047 (9th Cir.2006) (holding that a casino that "function[ed] as an arm of the Tribe" enjoyed tribal immunity), cert. denied, 549 U.S. 1231, 127 S.Ct. 1307, 167 L. Ed.2d 119 (2007)*; 1293 <u>Ramey Constr. Co. v. Apache Tribe of the Mescalero Reservation</u>, 673 F.2d 315, 320 (10th Cir.1982) (holding that an inn which was "a sub-entity of the Tribe rather than a separate corporate entity" enjoyed tribal immunity). While the Supreme Court has expressed misgivings about recognizing tribal immunity in the commercial context, the Court has also held that the doctrine "is settled law" and that it is not the judiciary's place to restrict its application.

As quoted above, <u>Native American Distributing</u> cites <u>Allen v. Gold Country Casino</u>, 464 F.3d 1044, 1047 (9th Cir. 2006) as a case holding that a casino that functioned as an arm of a tribe enjoyed tribal immunity. <u>Allen</u> dismissed the casino, stating that the Indian Gaming Regulatory Act, 25 U.S.C. § § 2701 *et seq*. (IRGA), provides for the creation and operation of Indian casinos to promote "tribal economic development, self-sufficiency, and strong tribal governments." <u>Allen</u> at 1046, quoting 25 U.S.C. §2702(1).   <u>Allen</u> noted that one of the principal purposes of the IRGA is to insure that the Indian tribe is the primary beneficiary of the gaming operation. <u>Allen</u> at 1046, quoting 25 U.S.C. § 2702(2).

The complaint in this action repeatedly refers to the casino in a somewhat vague and conclusory fashion as "a private enterprise."   When it comes to specifics, however, the complaint alleges that "The Fort Sill Apache Casino was established by the Fort Sill Apache Tribe of Oklahoma as an economic development project, and it is operated pursuant to the Indian Gaming Regulatory Act of 1988, 25 U.S.C. § 2701 *et seq*., which authorized gaming on tribal lands." (Doc. no. 1, ¶ 19.) The complaint describes the casino as "[t]he Tribe's gaming facility." (Doc. no. 1, ¶ 19.) Unlike <u>Native American Distributing</u> where there was an issue regarding whether the tobacco manufacturer was a division of the tribal corporation or of the tribe itself, in the instant

action the allegations and plaintiffs' briefing papers concede that "The gaming facility so named [the Fort Sill Apache Tribe Casino] is a tribal enterprise...." (Plaintiff's resp. br., doc. no. 19, p. 4.)

In support of their contention that the Fort Sill Apache Casino is not entitled to immunity as a tribal enterprise, plaintiffs rely on San Manuel Indian Bingo and Casino and San Manuel Band of Serrano Mission Indians v. National Labor Relations Board, 475 F.3d 1306 (D.C. Cir. 2007). That decision affirmed the National Labor Relations Board's application of the National Labor Relations Act to a tribal casino. The court's reasoning was based on the nature of that NLRA as a general federal law, which is not an issue in this case. San Manuel Indian Bingo and Casino is of no help to plaintiffs here.

Given the Fort Sill Apache Casino's alleged creation under the Indian Gaming Regulatory Act, given plaintiffs' concession that the casino is a tribal enterprise, and given the fact that plaintiffs have not produced any evidence (or asked for an opportunity to submit evidence) to show that the Fort Sill Apache Casino is not an arm or subdivision of the Tribe, the court finds that, as a matter of law, the Fort Sill Apache Casino is an arm of the Tribe, that it is owned and operated by the Tribe, and that the casino's economic advantages inure to the Tribe. *See*, Allen at 1047. Accordingly, immunity of the casino directly protects the sovereign Tribe's treasury, which is one of the historic purposes of sovereign immunity. *See*, *id.* Consistent with the Tenth Circuit's discussion in Native American Distributing, *supra* at 1292-93, the court concludes that the Fort Sill Apache Casino is immune from suit based on tribal immunity. The Fort Sill Apache Casino is **DISMISSED** from this action on that basis.

## 2. *Immunity of the Individual Defendants*

Applying the directive of <u>Native American Distributing</u> to focus on the type of relief requested in determining these tribal immunities, the court separately considers official-capacity claims and individual-capacity claims, looking in each discussion at the type of equitable relief requested and at the availability of monetary relief.

### *a. Official-capacity claims against the individual defendants.*

A tribe's sovereign immunity immunizes tribal officials from claims made against them in their official capacities. <u>Native American Distributing</u>, 546 F.3d at 1296, citing <u>Fletcher v. United States</u>, 116 F.3d 1315, 1324 (10th Cir. 1997).

In <u>Fletcher</u>, the Tenth Circuit stated that "[b]ecause the relief requested by Individual Plaintiffs, concerning rights to vote in future tribal elections and hold tribal office, if granted, would run against the Tribe itself, the Tribe's sovereign immunity protects these defendants in their official capacities." <u>Fletcher</u>, 116 F.3d at 1324. Thus, even when prospective equitable relief which would run against the tribe is sought from tribal officials sued in their official capacities, the tribe's immunity bars such claims.[9]

In this action, the equitable relief requested in the complaint, if granted, would require the individual defendants to stop the trespassing which is allegedly occurring by removing casino fixtures and other property belonging to the casino from plaintiffs' property. This relief runs against the Tribe. This fact is apparent because even if the individual defendants were to personally go to the property and remove the offending fixtures, the fixtures are those of the Tribe's gaming facility so that it is the

_____

[9]The parties' briefs focus on the <u>Ex Parte Young</u> doctrine's application to this action. *See*, <u>Ex Parte Young</u>, 209 U.S. 123 (1908). That doctrine allows official-capacity claims against individuals to go forward when only prospective non-monetary equitable relief is requested, as an exception to Eleventh Amendment immunity. The analysis in <u>Native American Distributing</u> and in <u>Fletcher</u> indicate that even when prospective non-monetary relief is involved, the determinative question is whether relief would, in actuality, run against the tribe.

Tribe's property which is affected.  The court concludes that the equitable relief requested in this action against individual defendants, sued in their official capacities, is relief which runs against the Tribe and that such claims for relief will be dismissed based on the Tribe's immunity.

Official-capacity claims for monetary relief necessarily seek monetary relief from the Tribe's treasury.  Accordingly, claims for monetary relief from the individual defendants sued in their official capacities necessarily run against the Tribe, and those claims for relief will also be dismissed.[10]

Thus, consistent with the statement in <u>Native American Distributing</u>, 546 F.3d at 1296,  that "a tribe's immunity generally immunizes tribal officials from claims made against them in their official capacities," all *official-capacity* claims alleged against individual defendants Houser, Ware, Darrow, Isom, Bucknor and Mann are **DISMISSED** based on tribal immunity.[11]

> *b. Individual-capacity claims against the individual defendants.*

Individual defendants may be sued in their individual capacities even where suits arise out of actions the individuals took in their official capacities.  <u>Native American Distributing</u>, 546 F.3d at 1296, citing <u>Russ v. Uppah</u>, 972 F.2d 300, 303 (10th Cir. 1992).  Tribal officials are immunized from suits brought against them in their individual capacities only when suit is brought against them *because of* their official capacities--that is, because the powers the individual possesses in his or her official capacities enables that person to grant the relief requested on behalf of the

---

[10]*See*, <u>Ex Parte Young</u> discussion, n.8, indicating that the exception to immunity which allows certain official-capacity claims to go forward applies, if otherwise applicable, only to the extent that the claims seek *non*-monetary relief.  *See*, <u>Timpanogos Tribe v. Conway</u>, 286 F.3d 1195, 1199 (10th Cir. 2002) (tribe narrowed its complaint to come within <u>Ex parte Young</u> doctrine, seeking only prospective, non-monetary, injunctive relief).

[11]Defendant Nott, casino manager, is not included in this list because he is not sued in his official capacity.  He is not alleged to be an official of the Fort Sill Apache Tribe.

tribe.  Native American Distributing, *supra* at 1296, emphasis in original.  In this regard, it is appropriate to take guidance from cases discussing federal and state sovereign immunity.  *Id.*  Where a suit is brought against the agent or official of a sovereign, to determine whether sovereign immunity bars the suit, the court asks whether the sovereign is the real, substantial party in interest.  *Id.*  The answer to this question turns on the relief sought by the plaintiffs.  *Id.*, quoting Frazier v. Simmons, 254 F.3d 1247, 1253 (10th Cir. 2001).  The general rule is that relief sought nominally against an officer in his individual capacity is, in fact, against the sovereign, if the decree would operate against the sovereign.  *Id.*, quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984).  Where, however, the plaintiffs' suit seeks money damages from the officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, sovereign immunity does not bar the suit so long as the relief is sought not from the sovereign's treasury but from the officer personally.  Native American Distributing, *supra* at 1297, quoting Alden v. Maine, 527 U.S. 706, 757 (1999).  Thus, the issue of whether plaintiffs' claims against defendants sued in their individual capacities are barred by the Tribe's immunity is determined by whether the  relief requested would operate against the Tribe.

Again, given the types of incursions alleged, such as fixtures of the Tribe's casino improperly placed on plaintiffs' property, the individual tribal officers and members who are sued in their individual capacities for equitable relief (Houser, Ware, Darrow, Isom, Bucknor and Mann) would only be able to grant such relief because of the offices they hold with the Tribe.  For example, they could perhaps vote to have the Tribe move the fixtures, but acting individually, they would have no authority to remove the Tribe's fixtures. If they moved the fixtures based on their individual decision to do so, they would be moving fixtures and improvements that

belong to the Tribe.  Similarly, any authority that Manager Nott might have to personally remove the casino's fixtures necessarily derives from his position as casino manager.  If he were to exercise that authority and remove the fixtures, he would be moving fixtures and improvements that the complaint alleges belong to the Tribe's gaming facility.

The court finds that regardless of any of the defendants' individual ability to provide the equitable relief requested in this action, such relief would necessarily run against the Tribe.  The court finds that defendants Houser, Ware, Darrow, Isom, Bucknor, Mann and Nott cannot, therefore, be sued in their individual capacities for the equitable relief sought in this action. Plaintiffs' requests for equitable relief from these defendants, sued in their individual capacities, are **DISMISSED** based on tribal immunity.

On the other hand, Native American Distributing makes clear that claims for money damages from each of these individual defendants, sued in their individual capacities, are not barred, so long as it is clear plaintiffs seek money damages from the individual defendants personally and not from the Tribe.  Native American Distributing, 546 F.3d at 1297.  Defendants' argument that plaintiffs' claims for money damages from all of the individuals sued in their individual capacities (Houser, Ware, Darrow, Isom, Bucknor, Mann and manager Nott) should be dismissed is rejected.  These claims remain but are limited to claims for monetary damages for wrongful conduct fairly attributable to the individual himself or herself.  *See*, Native American Distributing, *supra* at 1297, quoting Alden v. Maine, 527 U.S. 706, 757 (1999).[12]

---

[12]The complaint does not identify with much specificity any wrongful conduct on the part of any of the individual defendants.  It does, however, allege that all of the individual defendants have acted outside the scope of their authority in violation of federal statutes, by trespassing,

(continued...)

<u>Rule 19 Grounds for Dismissal</u>

Defendants also argue this action must be dismissed because the United States and the Tribe are required parties who cannot be joined due to their sovereign immunity. Although defendants recite the factors that the court must consider under Rule 19(b)(1)-(4) to determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed, defendants have not analyzed these factors. Regardless, based on the rulings contained in this order, the principal claims remaining are individual-capacity claims asserted against individual defendants for monetary damages.[13] There is no reason the Tribe or the United States would be required to be parties to this action, as a prerequisite to the adjudication of these claims for money damages from the individual defendants. Defendants' argument that this action should be dismissed for failure to join required parties under Rule 19 is rejected.

<u>The Motion to Strike</u>

Finally, defendants move to strike the sixth paragraph of the prayer which seeks monetary damages including treble damages. No basis in law has been shown for treble damages. As previously stated, however, compensatory monetary damages are potentially recoverable from the individual defendants sued in their individual

---

[12](...continued)
hindering access, encroaching, detaining and destroying" the plaintiffs' property (doc. no. 1, ¶ 10); that defendants Houser, Ware, Darrow, Bucknor and Mann have acted individually outside the scope of their authority in allowing and perpetrating illegal actions against the property interests of the plaintiffs (doc. no. 1, ¶ 11), and that defendant Knott [or Nott], as manager of the casino, has acted illegally by taking action that has destroyed the plaintiffs' property and that he continues to allow and acquiesce to the illegal actions by all defendants under the guise of the operation of the casino. These allegations of *individual* wrongdoing are sufficient to state a claim against these defendants individually under the remaining theories of liability (counts two and seven).

[13]There is also a request for declaratory relief, asking the court to declare that the actions of the defendants are outside the scope of their authority. (Doc. no. 1, prayer, ¶ 1.)

capacities.  Accordingly, except for the reference to trebling of damages which is **STRICKEN** as requested, the motion to strike is **DENIED**.

<u>Rulings</u>

After careful consideration, defendants' motion to dismiss and motion to strike are each **GRANTED** in part and **DENIED** in part.  The courts' rulings are summarized as follows.

Defendants' argument that this action should be dismissed for failure to allege any federal statutes which provide federal subject matter jurisdiction is rejected. Federal subject matter jurisdiction exists under 25 U.S.C. § 345, and the court exercises its supplemental jurisdiction over the Kerchee Plaintiffs' and the Pence Plaintiffs' state law trespass claim.

Claims alleging violation of 25 U.S.C. § 177, § 202, § 348, § 415(a) and §3713(a)(1)  are dismissed for failure to state a claim.  Amendment would be futile. Accordingly, counts one, three, four, five and six are **DISMISSED** with prejudice under Rule 12(b)(6).  Count two, which alleges a violation of 25 U.S.C. § 345, is a theory of liability available to the Kerchee Plaintiffs.  To the extent that the Pence Plaintiffs allege a violation of § 345, however, their claim for relief under this statute is dismissed under Rule 12(b)(6) because the Pence Plaintiffs are not alleged to be owners of the allotment in question.  Amendment would be futile.  Therefore, to the extent it is alleged by the Pence Plaintiffs, count two is **DISMISSED** with prejudice. Count seven, which alleges violation of state laws of trespass, remains as a viable theory of relief for both the Kerchee Plaintiffs and the Pence Plaintiffs.  Accordingly, that count remains.

The Fort Sill Apache Casino is dismissed from this action without prejudice under Rule 12(b)(1) based on its tribal immunity, because the allegations (and

plaintiffs' concessions) conclusively show that the casino is an arm of the Fort Sill Apache Tribe of Oklahoma.[14]

All claims for relief against the individual defendants in their official capacities are dismissed with prejudice based on tribal immunity, because the relief requested, if granted, would, in actuality, amount to relief against the Tribe.[15]

With respect to claims for relief against the individual defendants sued in their individual capacities, plaintiffs' claims for equitable relief (essentially asking defendants to remove the casino's fixtures and restore the property) are **DISMISSED** with prejudice based on tribal immunity because the relief requested would amount to relief against the Tribe.  Plaintiffs' claims for monetary relief from the individual defendants sued in their individual capacities, remain.

Plaintiffs' request for declaratory relief is relief from the court, not from the Tribe.  The request for declaratory relief remains.

Defendants' argument that dismissal is required under Rule 19 is rejected.

---

[14]If plaintiffs believe they have evidence to establish that the casino is not, in fact, a tribal enterprise, or an arm of the Tribe, whose treasury and resources would be subject to the relief requested in this action, then they may seek reconsideration of this narrow issue within twenty days of the date of this order.  Any such motion for reconsideration must be accompanied by evidence or by a request for a hearing for good cause shown.

[15]   One fact not lost on this court is the fact that the collective effect of the defendants' assertions of immunity, taken together with the tribe's immunity, is that the plaintiffs, alleging a plain and simple trespass (and, taking the allegations of the complaint to be true, as the court must at this point, a brazen one at that), would, in the defendants' (and the tribe's) scheme of things, be left without a speedy and effective judicial remedy.  Application of immunity doctrine in this situation strikes the court as a matter in some ways decidedly distinct from the application of immunity doctrine in the context of a consensual transaction, in which the party left holding the bag can at least be said to have voluntarily chosen to deal with an entity that might later find it convenient to invoke sovereign immunity to avoid its just debts, e.g., Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751 (1998).  If plaintiffs' core factual allegations in this case prove to be accurate, and if, in that event, the course of proceedings contemplated by this order does not afford effective relief to the plaintiffs, it is at least conceivable that remedial possibilities not addressed by the parties or, consequently, by this court, will deserve attention.

Defendants' motion to strike is **GRANTED** with respect to the request for treble damages but is otherwise **DENIED**.

Summary of Remaining Claims

As a result of these rulings, this action survives the motion to dismiss but is considerably narrowed. Relief under 25 U.S.C. § 345 is available only to the Kerchee Plaintiffs. Relief for trespass is available to the Kerchee Plaintiffs and to the Pence Plaintiffs. Thus, counts two and seven remain for adjudication. The only defendants with respect to these two counts are the individual defendants, sued in their individual capacities only, for personal money damages. These defendants are Jeff Houser, Lori Ware, Michael Darrow, Robin Isom, Loretta Bucknor and Janet Mann; and casino manager Norman D. Nott. Other than ordinary (*i.e.* not trebled) money damages from these individual defendants, the only available relief is the declaration requested in paragraph one of the prayer and such other relief as the court may deem appropriate.

Dated this 20th day of May, 2009.


STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE


08-1147p007(pub).wpd