# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BELVA ANN NAHNO-LOPEZ, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )   Case No. 08-CIV- 01147 F |
| | ) |
| JEFF HOUSER, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

/s/ Robert E. Prince
Robert E. Prince, OBA No. 7316
Carter & Prince
632 "D" Avenue
Lawton, Oklahoma  73501
Telephone:  580.248.8015
Facsimile:  580.353.6888
Email: lawyers2@sbcglobal.net

/s/ Richard J. Grellner
Richard J. Grellner, OBA No. 15521
Law Office of Richard J. Grellner
439 NW 18th St
Oklahoma City, OK 73103
Telephone:  405-602-0384
Facsimile: 405-602-0990
Email: rjgrellner@hotmail.com

July 2, 2009                          Attorneys for Defendants

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................... i

TABLE OF AUTHORITIES ............................................... ii

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ........................... iv

BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT... 1

    INTRODUCTION ..................................................... 1

    I. DEFENDANTS' STATEMENT OF MATERIAL FACTS
       AS TO WHICH THERE EXIST NO GENUINE ISSUES ................... 2

          A.  STATEMENT OF UNDISPUTED MATERIAL FACTS
             COMMON TO THE CLAIMS OF THE PENCE
              PLAINTIFFS AND THE KERCHEE PLAINTIFFS ............................ 2

          B.  STATEMENT OF UNDISPUTED MATERIAL FACTS
             RELATING TO THE PENCE PLAINTIFFS' CLAIMS ......................... 5

          C.  STATEMENT OF UNDISPUTED MATERIAL FACTS
             RELATING TO THE KERCHEE PLAINTIFFS' CLAIMS .................. 8

    II.  THE LEGAL PRINCIPLES GOVERNING SUMMARY JUDGMENT ........... 15

    III.  ARGUMENT ................................................... 16

          A.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
             ON THE GROUND OF SOVEREIGN IMMUNITY .............................. 16

          B. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
             ON THE ALTERNATIVE GROUND OF QUALIFIED IMMUNITY ..... 18

          C.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
             ON THE KERCHEE PLAINTIFFS' COMMON LAW CLAIM .............. 20

    IV.  CONCLUSION ................................................... 22

# TABLE OF AUTHORITIES

**Page**

**CASES**

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ..................................................... 15

Albright v. Rodriguez,
     51 F.3d 1531 (10th Cir. 1995) ................................................................. 1,19

Archuleta v. Wagner,
     523 F.3d 1278 (10th Cir. 2008) ................................................................. 18

Blackhawk-Cent. City Sanitation Dist. v. Am. Guar. & Liability Ins. Co.,
     214 F.3d 1183 (10th Cir.  2000) ................................................................. 15

Celotex Corp. v. Catrett,
     477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ............................................. 15

Chayoon v. Chao,
     355 F.3d 141 (2d Cir. 2004) ................................................................. 16

Cook v. Avi Casino Enterprises,
     548 F.3d 718  (9th Cir. 2008), cert. denied,
     - U.S. -, 129 S.Ct. 2159, 173 L.Ed.2d 1156 (2009) ................................................... 16

Enahoro v. Abubakar,
     408 F.3d 877  (7th Cir. 2005) ................................................................. 17

Fort Sill Apache Tribe v. United States, et al.,
     Civil Action No. 08cv541F (W.D.Ok.) ...................................................... 13,14

Hardin v. White Mountain Apache Tribe,
     779 F.2d 476 (10th Cir. 1985) ................................................................. 16

Harlow v. Fitzgerald,
     457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ............................................. 18

Hunter v. Bryant,
     502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam) ....................... 18

Imperial Granite Co. v. Pala Band of Indians,
    940 F.2d 1269 (9th Cir. 1991) .................................................................. 17,18

Kiowa Tribe of Oklahoma v. Manufacturing Tech., Inc.,
    523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998) ........................................... 16

Pearson v. Callahan,
    - U.S. - , 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ....................................................... 19

Santa Clara Pueblo v. Martinez,
    436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) .................................................... 16

Saucier v. Katz,
    533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ........................................... 19

United States v. The Imperial Immigration District,
    779 F.Supp. 1052 (S.D.Ca. 1992) .............................................................. 20

## RULES AND REGULATIONS

Rule 56 of the Federal Rules of Civil Procedure ................................................. 15,22

LcvR 56.1 .......................................................................................... 2,22

25 C.F.R. Part 162 ................................................................................... 8

25 C.F.R. §162.618.(a) ............................................................................ 12,13

25 C.F.R. §162.618( c)............................................................................. 13

## OTHER AUTHORITY

75 Am.Jur. 2d Trespass § 74 (1974) ................................................................. 20

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BELVA ANN NAHNO-LOPEZ, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 08-CIV- 01147 F** |
| | ) | |
| **JEFF HOUSER, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request pursuant to Rule 56 of the Federal Rules of Civil Procedure and LCvR 56.1 that the Court grant summary judgment with respect to surviving claims in trespass pursuant to 25 U.S.C. §345 and State common law.

The Statement of Undisputed Material Facts appearing in the accompanying Brief shows that in all relevant respects Defendants acted in their official capacities and within the scope of their authority as officials of the Fort Sill Apache Tribe of Oklahoma ("the Tribe"). Each Defendant is therefore entitled to judgment as a matter of law on the ground of tribal sovereign immunity.

The Statement of Undisputed Material Facts also shows that Plaintiffs cannot bear the burden of establishing the existence of a clearly established right of possession in the property allegedly subject to trespass, and that throughout the period of events in question Defendants have acted reasonably in the circumstances. They are therefore entitled to summary judgment as a matter of law on the alternative ground of qualified immunity.

Finally, the Statement of Undisputed Facts shows that the Tribe made use of the property claimed by the Kerchee Plaintiffs with the express consent of the Kerchee Plaintiffs or their predecessors in interest.  Defendants are therefore entitled to judgment as a matter of law on any claim in trespass under State common law.

The grounds for relief are set forth at greater length in the accompanying Brief in Support of Defendants' Motion for Summary Judgment.  Defendants submit their proposed Order electronically pursuant to Local Rule.

Respectfully submitted this 2nd day of July, 2009.

 /s/ Robert E. Prince
Robert E. Prince, OBA No. 7316
Carter & Prince
632 "D" Avenue
Lawton, Oklahoma  73501
Telephone:  580.248.8015
Facsimile:   580.353.6888
Email: lawyers2@sbcglobal.net

 /s/ Richard J. Grellner
Richard J. Grellner, OBA No. 15521
Law Office of Richard J. Grellner
439 NW 18th St
Oklahoma City, OK 73103
Telephone:  405-602-0384
Facsimile: 405-602-0990
Email: rjgrellner@hotmail.com

Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

BELVA ANN NAHNO-LOPEZ, et al.    )
                           )
          **Plaintiffs,**    )
                           )
vs.                        )     **Case No. 08-CIV- 01147 F**
                           )
JEFF HOUSER, et al.         )
                           )
         **Defendants.**    )
_____)

## BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Defendants seek judgment as a matter of law on the fundamental ground that throughout the period and events in question they have acted in their official capacities, and in one instance as an employee, of the Fort Sill Apache Tribe of Oklahoma ("the Tribe"), and within the scope of their official authority and duties, and therefore are shielded from suit by the doctrine of sovereign immunity.

Alternatively, Defendants seek judgment on the ground of qualified immunity, in that Plaintiffs cannot meet the threshold burden of showing the existence of a clearly established right or interest allegedly violated[1]; and second, because throughout the period and events in question

---

[1]See, e.g., Albright v. Rodriguez, 51 F.3d 1531 (10th Cir. 1995), reiterating the two-part standard involved where a Governmental official seeks summary judgment on qualified immunity grounds: "First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." Id. at 1534-35.

Defendants have acted reasonably by any objective measure.

Finally, Defendants are in any case entitled to summary judgment on the state common law claim in trespass from the "Kerchee Plaintiffs"[2] in that, throughout the period and events in question, the Tribe made use of the property with the express consent of the Kerchee Plaintiffs and their predecessors in interest.

### I. DEFENDANTS' STATEMENT OF MATERIAL FACT AS TO WHICH THERE EXIST NO GENUINE ISSUES

Defendants respectfully submit the following Statements of Undisputed Material Facts pursuant to Rule 56 of the Federal Rules of Civil Procedure and LCvR 56.1(b), with the accompanying citations to the record required by LCvR 56.1(b).

### A. STATEMENT OF UNDISPUTED MATERIAL FACTS COMMON TO THE CLAIMS OF THE PENCE PLAINTIFFS AND THE KERCHEE PLAINTIFFS

1. The Fort Sill Apache Tribe of Oklahoma (or "Tribe") is a federally recognized Tribe conducting its affairs pursuant to a duly approved Constitution and By Laws (or "Constitution"). Affidavit of Jeff Houser, ("Houser Affidavit"), ¶ 1. Attachment 1 (Attachment 1 includes affidavits from each member of the Tribe's Business Committee); Constitution. Attachment 2.

2. The Constitution provides that "[t]he supreme governing body of the Fort Sill Apache Tribe of Oklahoma shall be the General Counsel which shall consist of all members of the Tribe eighteen (18) years of age or older," Constitution, Article III; and further, that "[t]he General Council shall have full power and authority to act for the Tribe in all matters upon which the

---

[2]See Complaint for Declaratory Judgment, Permanent Injunction, Ejectment and Damages ("Complaint"), ¶ 1 (designating certain of the claimants "Kerchee Plaintiffs", and others "Pence Plaintiffs")

Tribe is empowered to act now or in the future ...."  Constitution, Article IV.

3.  The Constitution permits the "General Council [to] delegate specific power or authority to the Business Committee," Constitution, Article IV, which "consist[s] of a Chairman, a Vice-Chairman, a Secretary-Treasurer and three (3) additional Committeemen ...." Constitution Article III.

4.  The powers of the Tribe's Business Committee are set forth in Article VII of the Constitution, and include the power to "develop proposals which are necessary and appropriate in fulfilling the purposes of the Fort Sill Apache Tribe of Oklahoma ...", Constitution, Article VII (1)( c); and the power to "implement, administer and report on the progress of programs or other matters adopted or approved by the General Council.  Constitution, Article VII(1)(d).

5.  The Tribe's Business Committee has authority delegated from the Tribe's General Council to administer business operations of the Tribe approved by the Tribe's General Council, including operations of  the Fort Sill Apache Casino in Lawton, Oklahoma.  Houser Affidavit, ¶ 2.

6.  The members of the Tribe's Business Committee, and the Manager of the Fort Sill Apache Casino Darrell Nott, have been named Defendants in this lawsuit in their individual capacities.  Complaint, ¶¶ 4 - 8.

7.  Throughout the period and events in question, the members of the Tribe's Business Committee, have acted in their official capacities, and within the scope of their official authority. Houser Affidavit, ¶ 8 ; Affidavit of Lori Ware, ¶ 5 ; Affidavit of Michael Darrow, ¶ 5; Affidavit of Loretta Buckner, ¶ 5; Affidavit of Robin Isom, ¶ 5; Affidavit of Jeannette Mann, ¶ 5.

8. Throughout the period and events in question, the members of the Tribe's Business Committee have acted reasonably in addressing issues relating to the Tribe's use of property claimed by the Pence Plaintiffs and the Kerchee Plaintiffs as approved by the Tribe's General Council.   Houser Affidavit, ¶ 46; Ware Affidavit, ¶ 26; Darrow Affidavit, ¶ 26; Buckner Affidavit, ¶ 26; Isom Affidavit, ¶ 26; Mann Affidavit, ¶ 26.

9. The members of the Business Committee have not participated personally in activities undertaken by the Tribe on property claimed by the Pence Plaintiffs and the Kerchee Plaintiffs that have led to claims in trespass against them in their individual capacities.  Houser Affidavit, ¶ 9; Ware Affidavit, ¶ 6; Darrow Affidavit, ¶ 6; Buckner Affidavit, ¶ 6; Isom Affidavit, ¶ 6; Mann Affidavit, ¶ 6.

10. Darrell Nott ("Nott") is employed by the Tribe as Manager of the Fort Sill Apache Casino.  Nott does not have discretionary authority in his position as Manager, but is subject to supervision, direction and control from the Tribe's Business Committee.  Affidavit of Darrell Nott (Attachment 3), ¶ 2; Houser Affidavit, ¶ 4.

11. Throughout the period and events in question, Nott has acted in his capacity as Manager of the Fort Sill Apache Casino, within the scope of his authority as Manager, and subject to supervision, direction and control from the Tribe's Business Committee. Nott Affidavit, ¶¶ 6, 8.

12. Throughout the period and event in question, Nott has acted in the reasonable belief that directions from the Tribe's Business Committee have been lawful.  Nott Affidavit, ¶ 8.

13. Nott has not participated personally in the Tribe's use of property which the Pence Plaintiffs and Kerchee Plaintiffs claim has taken place without right.  Nott Affidavit, ¶ 9.

-4-

**B. STATEMENT OF UNDISPUTED MATERIAL FACTS**
**RELATING TO THE PENCE PLAINTIFFS' CLAIMS**

14.  In July 2007, and in January 2008 the Tribe entered a Lease Agreement with Amber Deak pursuant to approval by the Tribe's General Council, for "[t]he North 50 feet of a tract of land containing 1.25 acres in Section Thirty-three (33), Township 002 North, Range 011 West, Comanche County Oklahoma."  Houser Affidavit, ¶ 12; Deak Lease Agreement (January 3, 2008) (Attachment 4).

15. The 1.25 acres mentioned in the Tribe's Lease Agreement with Amber Deak of January 3, 2008 ("Deak Lease Agreement" hereafter) is the property as to which the Pence Plaintiffs have made claims in trespass.  Complaint, ¶¶ 3, 35.

16.  Attached to the Deak Lease Agreement is a statement from Ms. Deak "To Whom it May Concern" dated January 3, 2008, which included representations consistent with prior oral representations to Tribal officials:

> Please be advised that I am the owner of the above-referenced tract of land and I have agreed that the Fort Sill Apache Tribe of Oklahoma may have all rights of access and enjoyment to said property.

> The Fort Sill Apache Tribe of Oklahoma owns the Fort Sill Apache Casino immediately north and adjacent to my property.

> I specifically authorize and allow the Fort Sill Apache Tribe of Oklahoma and the Ft. Sill Apache Casino to use my land to place any equipment, fixtures, supplies, materials, apparatus, cranes, etc.  Further I specifically allow the Fort Sill Apache Tribe of Oklahoma to pour concrete if necessary on the North 50 feet of my property. * * *

> I specifically allow the Fort Sill Apache Tribe of Oklahoma to install air conditioning units and related equipment on the North 50 feet of my property. Further I state that I have not allowed any use of my property by anyone other than the Fort Sill Apache Tribe of Oklahoma.  Any person or individual on the property other than the Fort Sill Apache Tribe is a trespasser and does not have a

valid oral or written lease. * * *

(Attachment 4); Houser Affidavit, ¶ 12.

17. The foregoing statement "To Whom It May Concern" and earlier oral representations from Amber Deak to the same effect, are consistent with an inventory of property including the 1.25 acre tract subject to the Deak Lease Agreement shown in a March 3, 2004 "Order Determining Heirs and Decree of Distribution" entered by an Office of Hearings and Appeals of the U.S. Department of Interior with respect to the Estate of Margaret Nahno Kerchee Deak, Amber Deak's mother. Order Determining Heirs and Decree of Distribution, March 24, 2004 (Attachment 5).

18. The members of the Business Committee, acting in their official capacities and within the scope of their official authority, and in the reasonable belief that oral and written representations from Amber Deak as to ownership and capacity were true and accurate, authorized the Tribe to enter a lease with Amber Deak. Houser Affidavit, ¶ 16.

19. The Tribe's Business Committee, acting in their official capacities and within the scope of their official authority, and in reasonable reliance upon Deak's representations, authorized Darrell Nott, Manager of the Fort Sill Apache Casino, to hire contractors to install air conditioning units and related equipment on property leased from Amber Deak. Houser Affidavit, ¶ 13.

20. Acting pursuant to direction from the Tribe's Business Committee, Darrell Nott hired contractors to install air conditioning units and related equipment on property subject to the Deak Lease Agreement. Nott did so in his capacity as Manager of the Casino, within the scope of his authority as Manager, and in the reasonable belief that the Tribe's Business

Committee had lawful authority to give him such direction.  Nott Affidavit, ¶ 10.

21. In February 2009 the Acting Superintendent of the Anadarko Agency of the United States Bureau of Indian Affairs rendered a decision holding Amber Deak to have all right, title and interest in the 1.25 acres as to which Ms. Deak represented her ownership and capacity to lease in the statement accompanying the Deak Lease Agreement.  Acting Superintendent, Anadarko Agency, to Margaret Pence, February 5, 2009, page 2.  (Attachment 6).

22. The members of the Tribe's Business Committee, acting in their official capacities and within the scope of their official authority, authorized the Tribe to lease Amber Deak's 1.25 acres, and did so in the reasonable belief that Ms. Deak had right, title and interest to the property entitling her to lease the property to the Tribe.  Houser Affidavit, ¶ 16; Ware Affidavit, ¶ 10; Darrow Affidavit, ¶ 10; Buckner Affidavit, ¶ 10; Isom Affidavit, ¶ 10; Mann Affidavit, ¶ 10; Order Determining Heirs and Decree of Distribution, March 24, 2004 (Attachment 5); Acting Superintendent, Anadarko Agency, to Margaret Pence, February 5, 2009 (Attachment 6).

23. The members of the Tribe's Business Committee, acting in their official capacity and within the scope of their official authority, authorized the Manager of the Fort Sill Apache Casino to hire contractors to place air conditioning units and related equipment on property leased from Amber Deak, and did so in the reasonable belief that Ms. Deak possessed all right, title and interest in the portion of the 1.25 acres.  Houser Affidavit, ¶ 13; Order Determining Heirs and Decree of Distribution, March 24, 2004 (Attachment 5); Acting Superintendent, Anadarko Agency, to Margaret Pence, February 5, 2009 (Attachment 6).

24. The Department of Interior's Bureau of Indian Affairs has enforcement authority with respect to alleged trespasses upon leasehold Indian lands, including allotted lands held in trust by

the United States for the benefit of the owner.  25 C.F.R. Part 162.

25.  Representatives of the Bureau of Indian Affairs Anadarko Agency have inspected the air conditioning units and related equipment installed on property the Tribe has leased from Amber Deak, and have never contacted Tribal officials or otherwise indicated that the Tribe's use of the property is somehow improper.  Houser Affidavit, ¶ 17.

### C. STATEMENT OF UNDISPUTED MATERIAL FACTS
### RELATING TO THE KERCHEE PLAINTIFFS' CLAIMS

26.  The Kerchee Plaintiffs are Belva Ann Nahno-Lopez, Berdene Nahno-Lopez, Betty Jean Crocker, Lucinda Kerchee, Roberta C. Burgess-Kerchee, Gwendolyn Kay Kerchee and Melvin Kerchee, Jr.  Complaint, ¶ 23.

27.  The Kerchee Plaintiffs claim that Defendants are liable in their individual capacities for alleged activity in trespass upon a tract adjacent to the Fort Sill Apache Casino in Lawton, Oklahoma, which they identify as "approximately 64 acres of allotted land which is held in trust status and is known as 'Comanche Allotment No. 2329.'"  Complaint, ¶ 23.

28.  In or about June 1999 the Tribe's General Counsel authorized the Tribe's Business Committee to acquire the property subject to the Complaint from Lorene Pewewardy, Betty Crocker, Walter Kerchee, Berene Lopez, Melvin Kerchee, Sr. and Belva Lopez. These persons are either among the Kerchee Plaintiffs, or their  predecessors in interest (we continued to call these persons and any successors in interest "Kerchee Plaintiffs").  Resolution, June 1999. Attachment 7;  Houser Affidavit, ¶ 18.

29.  In December 2001 the Superintendent of the Anadarko Agency of the Bureau of Indian Affairs ("BIA") approved a purchase agreement ("Purchase Agreement") between

the Tribe and the Kerchee Plaintiffs.  Houser Affidavit, ¶ 19; Attachment 8.

30.  The members of the Tribe's Business Committee at the time, acting in their official capacity and within the scope of their official authority, authorized the Tribe to make monthly loans of $1000 to each of the Kerchee Plaintiffs pending consummation of the Purchase Agreement, loans which were secured by Promissory Notes to the Tribe.  Houser Affidavit, ¶ 20; Attachment 9.

31. The Tribe made loans totaling more than $144,000 pending consummation of the Purchase Agreement, which to date the Tribe has never attempted to recover from the Kerchee Plaintiffs.  Houser Affidavit, ¶ 21; Ware Affidavit, ¶12.

32.  When as a result of unrelated litigation it became apparent the Purchase Agreement would either be delayed indefinitely or prove impossible, the members of the Tribe's Business Committee, acting in their official capacities and within their official authority, approved a five year Lease Agreement with the Kerchee Plaintiffs ("Kerchee Lease Agreement" hereafter), beginning in October 2003 and calling for yearly payments to each of the Kerchee Plaintiffs. Kerchee Lease Agreement. Attachment 10.  Houser Affidavit, ¶ 22.

33.  The Kerchee Plaintiffs gave express consent to the Tribe to make use of the property, including consent to develop a portion of the property for customer parking for the Fort Sill Apache Casino.  Kerchee Lease Agreement. Attachment 10.

34.  Lorene Pewewardy, a predecessor in interest to on of the Kerchee Plaintiffs, died in or about 2005. The Area Superintendent of the BIA's Anadarko Agency then directed that any additional yearly payments due under the Kerchee Lease Agreement be made to BIA, in trust for the Estate of Lorene Pewewardy.  Attachment 11.

-9-

35. The Tribe's Business Committee caused subsequent payments due Lorene Pewewardy under the Kerchee Lease Agreement to be made to BIA, in trust for the Estate of Lorene Pewewardy.  Attachment 12.

35.  The Tribe's Business Committee believed direction from BIA to make additional yearly payments due Lorene Pewewardy to BIA in trust for the Estate of Lorene Pewewardy, tantamount to BIA approval of the Kerchee Lease Agreement.  Houser Affidavit, ¶ 26; Ware Affidavit, ¶ 15; Darrow Affidavit, ¶ 15 ; Buckner Affidavit, ¶ 15; Isom Affidavit, ¶ 15 ; Mann Affidavit, ¶ 15.

36.  During 2007, the members of the Tribe's Business Committee, acting in their official capacity and within the scope of their official authority, and in the reasonable belief the Tribe had a lawful leasehold interest, authorized a portion of the Kerchee property to be developed for purposes of customer parking adjacent to the Fort Sill Apache Casino, a use specifically authorized by the Kerchee Lease Agreement.  Kerchee Lease Agreement.  Attachment 10. Houser Affidavit, ¶ 27.

37. The members of the Tribe's Business Committee, acting in their official capacity and within the scope of their official authority, and in the reasonable good faith belief the Tribe had a lawful leasehold interest and the right to make use of the property for customer parking, directed Darrell Nott to have a portion of the property developed for purposes of customer parking at the Fort Sill Apache Casino.  Houser Affidavit, ¶ 28; Nott Affidavit, ¶ 10.

38.  Darrell Nott, acting in his official capacity as Manager and subject to direction from the Tribe's Business Committee that he reasonably believed to be lawful, hired contractors to develop a portion of the Kerchee property for purposes of customer parking at the Fort Sill

-10-

Apache Casino.  Nott Affidavit, ¶ 10.

39.  Neither Mr. Nott, nor any member of the Tribe's Business Committee, participated personally in developing a portion of the Kerchee property for purposes of customer parking at the Fort Sill Apache Casino.  Nott Affidavit, ¶9 ;  Houser Affidavit, ¶ 9; Ware Affidavit, ¶ 6; Darrow Affidavit, ¶ 6; Buckner Affidavit, ¶ 6; Isom Affidavit, ¶ 6; Mann Affidavit, ¶ 6.

40. When the Tribe began to develop the a portion of the property for customer parking, and throughout the Tribe's dealings with the Kerchee Plaintiffs to that time, the property subject to the Kerchee Lease Agreement was unimproved and vacant.   Nott Affidavit, ¶ 11.

41.  Some time after the Tribe began developing a portion of the Kerchee property for customer parking, a legal representative for the Kerchee Plaintiffs contacted representatives of the Tribe, alleged that the Tribe was in trespass, and demanded substantial compensation from the Tribe.  Houser Affidavit, ¶ 31; Ware Affidavit, ¶ 16; Darrow Affidavit, ¶ 16; Buckner Affidavit, ¶ 16; Isom Affidavit, ¶ 16; Mann Affidavit, ¶ 16.

42. The Tribe had by this time made substantial loans to the Kerchee Plaintiffs which to date the Tribe has never attempted to recover, and made the yearly payments to each of the Kerchee Plaintiffs as called for by the Kerchee Lease Agreement.  Houser Affidavit, ¶ 32.

43.  At the time demand was made for substantial compensation on behalf of the Kerchee Plaintiffs, it was well known in the region that operations at the Fort Sill Apache Casino were both profitable and growing.  Houser Affidavit, ¶ 33; Ware Affidavit, ¶ 18; Darrow Affidavit, ¶ 18; Buckner Affidavit, ¶ 18; Isom Affidavit, ¶ 18; Mann Affidavit, ¶ 18.

44.   The members of Tribe's Business Committee, acting in their official capacity and within the scope of their official authority, reasonably believed the Kerchee Plaintiffs had no

-11-

claim in trespass.  Houser Affidavit, ¶ 34; Ware Affidavit, ¶ 17; Buckner Affidavit, ¶ 17;

Isom Affidavit, ¶ 17; Mann Affidavit, ¶ 17.

45. In or about August 2007, the Area Superintendent of the Bureau of Indian Affairs'

Anadarko Agency forwarded a document to the Tribe's Chairperson headed "Trespass Notice",

and purporting to declare the Kerchee Lease Agreement  "null and void." Attachment 13.

46.  The members of the Tribe's Business Committee, acting in their official capacities

and within the scope of their official authority, and in the reasonable belief the administrative

determination of trespass was made in error and in violation of applicable procedure, authorized

Chairperson Houser to forward a "Notice Appeal and Statement of Reasons Regarding

Termination of the Lease" to the Area Superintendent.  Attachment 14; Houser Affidavit, ¶ 38;

Ware Affidavit, ¶ 22; Darrow Affidavit, ¶ 22; Buckner Affidavit, ¶ 22;

Isom Affidavit, ¶ 22; Mann Affidavit, ¶ 22.

47.  The Area Superintendent did not respond to the Notice of Appeal, but in December

2007 transmitted a letter purporting to furnish "final notice" of trespass.  Attachment 15.

48.  Regulations governing leasing operations on Indian lands, including lands held in

trust by the United States for benefit of the owner, provide that any tenant in apparent violation

of a lease term is entitled to a "Notice of Violation" setting forth the nature and extent of the

alleged violation(s).  25 C.F.R. §162.618(a).

49. These leasing regulations require that, in order to terminate any leasehold interest,

BIA must give notice of the alleged grounds for termination, notice of the right of appeal, and

notice of the requirement to vacate.  25 C.F.R. §162.618( c).

50. BIA never afforded the Tribe the benefit of procedural protections set forth in 25 C.F.R. §§ 162.618(a) and ( c) in purporting to terminate the Lease.  Houser Affidavit, ¶ 37.

51.  The members of the Tribe's Business Committee, acting in their official capacities and within the scope of their official authority, and in the reasonable belief the administrative determination of trespass determination was made in error and in violation of applicable procedure, authorized the Tribe to bring suit against the United States to challenge the determination.  Houser Affidavit, ¶ 42; Ware Affidavit, ¶ 23; Darrow Affidavit, ¶ 23 ; Buckner Affidavit, ¶ 23; Isom Affidavit, ¶ 23; Mann Affidavit, ¶ 23.

52.  In May 2008 the Tribe brought suit against officials of the United States pursuant to the Administrative Procedure Act, 5 U.S.C. §701 et seq., challenging the Area Superintendent's determination of trespass as erroneous and violative of multiple and fundamental leasing requirements, and so arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law.  Verified Complaint for Injunctive and Declaratory Relief, Fort Sill Apache Tribe v. United States, et al., Civil Action No. 08cv541F (W.D.Ok.).  Attachment 16.

53.  In May 2008 the Tribe caused Fort Sill Apache Tribe of Oklahoma v. United States, et al. to be dismissed when a legal representative for United States said in the presence of Chairperson Houser and the Tribe's lawyers that the order to forward payments due Lorene Pewewardy to the BIA was tantamount to approval of the Kerchee Lease Agreement and it would therefore be inappropriate for the United States to take action against the Tribe based on the administrative determination of trespass made by the BIA's Anadarko Agency.  Houser Affidavit, ¶ 43.

-13-

54.  Following the dismissal of <u>Fort Sill Apache Tribe of Oklahoma v. United States, et al.</u> the Government has to date pursued no action against the Tribe based on the administrative finding of alleged trespass by the BIA's Anadarko Agency.  Houser Affidavit, ¶ 43.

55.  Before the Kerchee Lease Agreement was due to expire in October 2008, the Tribe ceased making use of the property for customer parking.  Nott Affidavit, ¶ 10.

56.  Acting at the direction of the Tribe's Business Committee, Darrell Nott hired contractors to restore the property, which is now in better condition than before it was developed for custome parking.  Nott Affidavit, ¶¶ 10, 11.

57. Throughout the period and events in question relating to property subject to the Purchase Agreement and Kerchee Lease Agreement, the members of the Tribe's Business Committee have acted in their official capacities and within the scope of their official authority, and in the reasonable belief their conduct was lawful.  Houser Affidavit, ¶ 46; Ware Affidavit, ¶ 26; Darrow Affidavit, ¶ 26; Buckner Affidavit, ¶ 26; Isom Affidavit, ¶ 26; Mann Affidavit, ¶ 26.

-14-

## II.  THE LEGAL PRINCIPLES GOVERNING
## A MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides for entry of summary judgment where there exists "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56( c).  In Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court explained the "integral" role of summary judgment in the federal courts:

> The Federal Rules of Civil Procedure have for almost 50 years authorized motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact. Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed. Rule Civ. Proc. 1.

Id., 477 U.S. at 327.

The general principles are well established:  "Summary judgment should not be granted unless the evidence, viewed in the light most favorable to the party opposing the motion, shows there are no genuine issues of material fact and the moving party is due judgment as a matter of law." Blackhawk-Cent. City Sanitation Dist. v. Am. Guar. & Liability Ins. Co., 214 F.3d 1183, 1188 (10th Cir.  2000).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions ...."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Despite the generous standard accorded parties opposing summary judgment, we submit there can be no serious question that Defendants' Statement of Undisputed Material Facts and the governing legal principles nonetheless warrant entry of summary judgment on the ground of sovereign immunity, in that there exist no genuine issues as to whether each Defendant has acted

in an official capacity and within the scope of his or her official authority.

Alternatively, Defendants are no less entitled to summary judgment on the ground of qualified immunity, in that Plaintiffs cannot meet the burden of showing any infringement of clearly established rights or interests in the circumstances here.

We also proceed to demonstrate that in any case summary judgment is warranted on the Kerchee Plaintiffs' state common law claim, in that they entered a lease with the Tribe, thereby consenting to the Tribe's use of the property as specifically authorized by the lease.

## III. ARGUMENT

### A.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE GROUND OF SOVEREIGN IMMUNITY

"An Indian tribe is subject to suit only where Congress has authorized the suit or Congress or the tribe has waived immunity."  Kiowa Tribe of Oklahoma v. Manufacturing Tech., Inc., 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998).  Neither Congressional abrogation of Tribal immunity nor a Tribe's waiver of immunity may be implied, but instead must be unequivocally expressed.  See Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 56, 56 L.Ed.2d 106 (1978).

It is axiomatic that the sovereign immunity of the Tribe also extends to Tribal officials "acting in their representative capacity and within the scope of their authority, " Hardin v. White Mountain Apache Tribe, 779 F.2d 476, 479 (10th Cir. 1985), as well as to Tribal employees acting within the scope of employment.  See, e.g., Cook v. Avi Casino Enterprises, 548 F.3d 718, 727  (9th Cir. 2008), cert. denied, - U.S. -, 129 S.Ct. 2159, 173 L.Ed.2d 1156 (2009) ("tribal immunity protects tribal employees acting in their official capacity and within the scope of their

authority"); <u>Chayoon v. Chao</u>, 355 F.3d 141, 143 (2d Cir. 2004) (same).[3]

Plaintiffs are hard pressed to contest affidavits from the members of the Tribe's Business Committee establishing that throughout the period and events in question demonstrating that they acted in an entirely official capacity, and at express direction of, or within the scope of authority delegated by, the Tribe's General Council.  They are also hard pressed to show that the Manager of the Fort Sill Apache Casino acted other than in an official capacity and within the scope of his authority, when it should be undisputed that he followed apparently lawful directions from the Tribe's Business Committee to hire contractors for purposes of installing air conditioning and related equipment on property leased from Amber Deak, and to hire contractors for purposes of developing additional customer parking on a portion of the property leased from the Kerchee Plaintiffs.

Absent a showing that Defendants acted in other than an official capacity and within the scope of authority, Plaintiffs cannot avoid summary judgment on grounds of sovereign immunity. <u>See</u>, e.g., <u>Imperial Granite Co. v. Pala Band of Indians</u>, 940 F.2d 1269 (9th Cir. 1991), where a mining company brought trespass and related claims against a Tribe and officials in their individual capacities after the Tribe's governing body voted to deny access to a roadway as to which the company claimed an easement from the Tribe.  <u>Id.</u> at 1270.

---

[3]It is also axiomatic that, "[s]ince sovereign immunity is an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits, the denial of a claim of sovereign immunity is an immediately appealable interlocutory order under the "collateral order doctrine" of <u>Cohen v. Beneficial Industrial Loan Corp.</u>, 337 U.S. 541, 545-47, 69 S. Ct. 1221, 1225-26, 93 L. Ed. 1528 (1949)."  <u>Enahoro v. Abubakar</u>, 408 F.3d 877, 880 (7th Cir. 2005) (quoting <u>Rush-Presbyterian-St. Luke's Medical Center v. The Hellenic Republic</u>, 877 F.2d 574, 576 n.2 (7th Cir. 1989)).

As in this instance, the complaint in <u>Imperial Granite</u> "alleg[ed] no individual actions by any of the tribal officials named as defendants.... [T]he only action taken by those officials was to vote as members of the Band's governing body against permitting Imperial to use the road. Without more, it is difficult to view the suit against the officials as anything other than a suit against the Band.  The votes individually have no legal effect; it is the official action of the Band, following the votes that caused Imperial's alleged injury."  <u>Id.</u> at 1271.

For the same reasons "it is difficult to view the suit against [the Tribe's Business Committee] as anything other than a suit against the [Tribe]," <u>ibid.</u>, and for the same reasons the Court should enter summary judgment against Plaintiffs on the fundamental ground of sovereign immunity.

## B. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE ALTERNATIVE GROUND OF QUALIFIED IMMUNITY

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  <u>See</u> <u>also</u>  <u>Archuleta v. Wagner</u>, 523 F.3d 1278, 1282-83 (10th Cir. 2008) ("government officials performing discretionary functions generally are granted a qualified immunity ... insofar as there conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

A unanimous Supreme Court recently set forth the rationale for the qualified immunity doctrine, and the importance of resolving the issue "at the earliest possible stage in litigation," <u>Hunter v. Bryant</u>, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (<u>per</u> <u>curiam</u>), in the

following terms:

> Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield the officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a "mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." <u>Groh v. Ramirez</u>, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (citing Butz v. <u>Economou</u>, 438 U.S. 478, 507 (1978) (noting that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

> Because qualified immunity is "an immunity from suit rather than a mere defense to liability ... it is effectively lost if the case is erroneously permitted to go to trial." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985) .... Indeed, we have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." <u>Anderson v. Creighton</u>, 438 U.S. 635, 640, n. 2 (1987). Accordingly, "we have repeatedly stressed the importance of resolving immunity questions at the earliest possible stage of the litigation." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991) (<u>per</u> <u>curiam</u>).

<u>Pearson v. Callahan</u>, - U.S. - , 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009).

Where the defense of qualified immunity is asserted in a summary judgment context, the burden shifts to the plaintiff to meet the two-part standard first articulated by <u>Harlow v. Fitzgerald</u>, <u>supra</u>, 457 U.S. at 818. <u>See</u> <u>Albright v. Rodriguez</u>, <u>supra</u>, 51 F.3d at 1534-35 ("First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue.").[4]

---

[4]The Supreme Court required this two step sequence for resolving claims of qualified immunity in <u>Saucier v. Katz</u>, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), but reconsidered this mandate in <u>Pearson v. Callahan</u>, holding that "while the sequence set forth there is often appropriate, it should no longer be required as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Id.</u>, 129 S.Ct. at 818.

If a plaintiff fails to meet either element of the two-part standard, the court must immediately hold the defendant entitled to immunity from suit. <u>Albright v. Rodriguez</u>, <u>supra</u>, 51 F.3d at 1535.  Only if a plaintiff successfully establishes infringement of a clearly established right or interest does the burden shift to the defendant to demonstrate entitlement to summary judgment as a matter of law based on the reasonableness of his or her conduct in the circumstances.

Here neither the set of Plaintiffs can show an invasion of interests clearly established at the time any alleged activity in trespass took place.  Indeed, in light of the BIA determination that Amber Deak has all right, title and interest in the 1.25 acres she has leased to the Tribe, for purposes of qualified immunity analysis the Pence Plaintiffs cannot show that Defendants have invaded **any** property interest, clearly established or otherwise.

The Kerchee Plaintiffs are similarly hard pressed in this respect, where it should be undisputed they entered purchase and lease agreements with the Tribe, took loans totaling many thousands of dollars that the Tribe has yet to seek to recover, and alleged the Tribe was infringing upon their rights in the property only after it became apparent that the Fort Sill Apache Casino was profitable and growing.

### C.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE KERCHEE PLAINTIFFS' COMMON LAW CLAIM

A "peaceful entry on land by consent is not actionable."  75 Am.Jur. 2d Trespass § 74 (1974).  Thus "[c]onsent by the owner is an absolute and valid defense to an action for trespass." <u>United States v. The Imperial Immigration District</u>, 779 F.Supp. 1052, 1060 (S.D.Ca. 1992). Such "consent must be granted by one in possession, by one entitled to possession of the

possession, or by one otherwise competent and authorized to give such consent.... (citation omitted).  Ibid.

Here the Kerchee Plaintiffs entered a purchase agreement with the Tribe, obtained many thousands of dollars in loans in anticipation of the eventual completion of the deal, and ultimately entered a five year lease in which they specifically authorized the Tribe to use of a portion of their property for additional customer parking at the Fort Sill Apache Casino. There can be no genuine issue as to whether a leasehold interest in property conveyed in these circumstances gives rise to an "absolute and valid defense" against a common law claim in trespass against Tribal officials based on their Tribe's undisputed and "peaceful entry on land by consent."

## IV. CONCLUSION

For the foregoing reasons Defendants respectfully request pursuant to Rule 56 of the Federal Rules of Civil Procedure and LcvR 56.1 that this Court enter summary judgment in favor of Defendants.  Defendants submit a proposed Order electronically pursuant to Local Rule.

Respectfully submitted this 2nd day of July, 2009.


 /s/ Robert E. Prince
Robert E. Prince, OBA No. 7316
Carter & Prince
632 "D" Avenue
Lawton, Oklahoma  73501
Telephone:  580.248.8015
Facsimile:  580.353.6888
Email: lawyers2@sbcglobal.net

/s/ Richard J. Grellner
Richard J. Grellner, OBA No. 15521
Law Office of Richard J. Grellner
439 NW 18th St
Oklahoma City, OK 73103
Telephone:  405-602-0384
Facsimile: 405-602-0990
Email: rjgrellner@hotmail.com
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of July, 2009 I caused Defendants' Motion for Summary Judgment to be electronically transmitted to the Clerk of Court using the ECF system for filing, thereby serving the documents on:

Jon Velie, Esq.
VELIE & VELIE
210 East Main Street, Suite 222
Norman, OK 73069

Gary J. Montana, Esq.
N. 12923 N. Prairie Road
Osseo, WI 54758

/s/ Richard J. Grellner
Richard J. Grellner, OBA No. 15521

-22-